[Cite as *HAD Ents. v. Galloway*, 192 Ohio App.3d 133, 2011-Ohio-57.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

HAD ENTERPRISES, :
D.B.A. TWIN RIVERS EQUIPMENT, :
                                          :

      Appellant, : Case No. 09CA796
                                          :

      v. : **Released: January 6, 2011**
                                          :

GALLOWAY et al., : DECISION AND
                                          : JUDGMENT ENTRY

      Appellees. :
_____

APPEARANCES:

Price & Rosenberger and Paul F. Price, for appellant.

Anthony A. Moraleja, for appellees.[1]
_____

MCFARLAND, Presiding Judge.

{¶ 1} Appellant, HAD Enterprises, appeals the Pike County Court of Common Pleas journal entry denying all its claims brought in connection with an alleged breach of contract for the improvement of real property. On appeal, appellant contends that (1) the trial court erred when it ruled that the claim of unjust enrichment is not available, (2) the trial court erred in relying upon lay witness opinion testimony as to benefit conferred under the theory of unjust

_____
[1] Appellees have not filed a brief on appeal.

enrichment, (3) the trial court erred in finding that there was no clear, unambiguous promise upon which appellant could have reasonably relied in support of a promissory-estoppel claim, (4) in denying appellant's promissory-estoppel claim, the trial court erred in relying upon a finding that appellant worked outside the bounds of consent, and (5) in denying appellant's promissory-estoppel claim, the court erred in relying upon a finding that appellant did not expect payment for services when work began.

{¶ 2} Here, because we find that the trial court did not actually find the remedy of unjust enrichment to be unavailable, but instead found that it did not apply based upon the merits, we overrule appellant's first assignment of error. Further, we find that the trial court's reliance on lay-witness testimony was permitted under Evid.R. 602 and 701, and we overrule appellant's second assignment of error. Because we find that the trial court did not err in finding that there was no clear, unambiguous promise between the parties, we cannot conclude that the trial court erred in denying appellant's promissory-estoppel claim. Therefore, in light of our conclusion that the first element of promissory estoppel, which requires a clear, unambiguous promise, was lacking, we will not address appellant's fourth and fifth assignments of error, as they are also grounded upon the doctrine of promissory estoppel. Accordingly, the decision of the trial court is affirmed.

FACTS

{¶ 3}  This matter stems from an alleged oral contract between David Hix,[2] on behalf of appellant, HAD Enterprises, and appellee Wanda Galloway, former owner of real property now owned by her grandson, appellee Jeremy Galloway. Essentially, Hix contends that he had an oral contract with Wanda whereby he was to fill in a hole or pond on the Galloway property and also raise the level of the Galloway property to alleviate flooding and mosquito problems on his adjacent property.  Hix claimed that in exchange for doing the work, he and/or the company, HAD Enterprises, would be permitted to use the improved Galloway property for parking.[3]  Wanda essentially contends that after appellant asked her over and over again for six years to fill in the pond on her property, in March 2004, she finally allowed him to, but she claims that there was no other agreement or discussion regarding compensation or parking.

{¶ 4}  The record reflects that Hix, apparently on behalf of HAD Enterprises, commenced the work on the Hix and the Galloway properties and worked for nearly two years before being instructed to stop.  During that time, the record indicates that Wanda, accompanied by either her daughter, Pam Galloway, or her grandson, Jeremy, expressed concern to Hix on three separate occasions regarding the scope and amount of work being done.  Finally, after receiving written

---

[2] Hix testified at trial that he is the Vice President of HAD Enterprises and is not the owner.

[3] Hix and his mother lived in trailers placed upon property adjacent to that of the Galloways on which HAD Enterprises also located its business garage.

correspondence directing him to stop the work, Hix ceased work on the property in January 2006. By then, after nearly two years, the pond had been only partially filled in. Subsequently, appellant submitted to appellee, Wanda, a bill for services performed on her property totaling $14, 972. After receiving this bill, Wanda transferred the property to her grandson, Jeremy.

{¶ 5} On April 7, 2006, appellant, HAD, filed a complaint against both Wanda and Jeremy, alleging fraud, breach of contract, unjust enrichment, foreclosure of lien, fraudulent conveyance, and promissory estoppel.[4] In response, appellees filed an answer denying the allegations and also filed counterclaims, all of which were eventually denied by the trial court and have not been appealed to this court. After conducting extensive discovery, a three-day bench trial was held, ending on February 9, 2009. After making detailed findings of fact, the trial court issued a journal entry, incorporating its findings of fact and denying all appellant's claims, with the exception of the claim for fraudulent conveyance. The trial court determined, however, that because appellant had no meritorious claim for money against appellees, it was not a "creditor" of appellees within the meaning of the fraudulent-conveyance statute, and therefore appellant was not entitled to relief.

{¶ 6} It is from this judgment that appellant now brings its timely appeal, assigning the following assignments of error for our review.

---

[4] As they are not relevant to this appeal, the details underlying the filing of the claims for fraud, foreclosure of lien, and fraudulent conveyance have are not included in our delineation of the facts.

## ASSIGNMENTS OF ERROR

I. The trial court erred when it ruled that the claim of unjust enrichment is not available.

II. The trial court erred in relying upon lay witness opinion testimony as to benefit conferred under theory of unjust enrichment.

III. The trial court erred in finding that there was no clear unambiguous promise upon which the appellant could have reasonably relied upon [sic] in support of a promissory estoppel claim.

IV. In denying the appellant's promissory estoppel claim, the trial court erred in relying upon a finding that the appellant worked outside the bounds of consent.

V. In denying appellant's promissory estoppel claim, the court erred in relying upon a finding that the appellant did not expect payment for services when he began work.

## ASSIGNMENT OF ERROR I

{¶ 7} In its first assignment of error, appellant contends that the trial court erred when it ruled that the claim of unjust enrichment was not available to appellant. Appellant further claims that the specific issue to be determined under this assignment of error is whether the quasi-contractual remedy of unjust enrichment became available to it when the trial court found that no contract, either express or oral, existed between the parties.

{¶ 8} Unjust enrichment is a quasicontractual theory of recovery. *Dailey v. Craigmyle & Son Farms, L.L.C.*, 177 Ohio App.3d 439, 2008-Ohio-4034, 894

N.E.2d 1301, citing *Hummel v. Hummel* (1938), 133 Ohio St. 520, 14 N.E.2d 923, paragraph one of the syllabus.  As set forth verbatim in *Dailey* at ¶ 20:

> Unjust enrichment occurs " 'when a party retains money or benefits which in justice and equity belong to another.' " *Cooper v. Smith*, 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, at ¶ 30, citing *Liberty Mut. Ins. Co. v. Indus. Comm.* (1988), 40 Ohio St.3d 109, 111, 532 N.E.2d 124; *Dixon v. Smith* (1997), 119 Ohio App.3d 308, 317, 695 N.E.2d 284. "Under the doctrine of unjust enrichment (i.e., quantum meruit), a party may recover the reasonable value of services rendered in the absence of an express contract if denying such recovery would unjustly enrich the opposing party." *In re Estate of Popov*, Lawrence App. No. 02CA26, 2003-Ohio-4556, 2003 WL 22017299, at ¶ 26. In order to recover on a claim of unjust enrichment, the party asserting the claim must demonstrate "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 12 OBR 246, 465 N.E.2d 1298. Quantum meruit is the measure of damages afforded in an action for quasicontract. *Barkan & Robon, Ltd. v. Wise*, Lucas App. No. L-05-1259, 2006-Ohio-2918, 2006 WL 1580044, at ¶ 16, citing Black's Law Dictionary (5th Ed.1981) 1119; see also *Myers v. Good*, Ross App. No. 06CA2939, 2007-Ohio-5361, 2007 WL 2897753, at ¶ 12 ("When a contract fails for a lack of 'meeting of the minds,' equity should be imposed to prevent an unjust enrichment. * * * The proper remedy is quantum meruit, or the value of the benefit conferred on the other party").

{¶ 9}   A review of the record reveals that the trial court stated the following with respect to appellant's claim for unjust enrichment:

> A party seeking a remedy under contract cannot also seek equitable relief for unjust enrichment. *Ryan v. Rival Mfg. Co.* (Dec. 16, 1981), Hamilton App. No. C-810032, unreported, 1981 WL 10160.  The Court finds under the facts of the present case that unjust enrichment does not apply.

The trial court then discussed the evidence presented at trial related to the benefit conferred to appellees by appellant's work and rejected appellant's claim on its merits.

{¶ 10} Thus, although the trial court did set forth the general proposition that a party cannot seek dual relief under contract and quasi-contract theories (see *Myers v. Good*, 2007-Ohio-5361), it did not state that the remedy of unjust enrichment was unavailable to appellant, but rather that it was simply did not apply, given the facts and evidence presented at trial.  See also *Loop v. Hall*, Scioto App. No. 05CA3041, 2006-Ohio-4363 ("a party may not recover for unjust enrichment when an express contract is involved. * * * When an express contract exists, a party must pursue a breach of contract action"); *Ryan v. Rival Mfg. Co.* (Dec. 16, 1981), Hamilton App. No. C-810032, 1981 WL 10160 ("actions on quasi-contract for unjust enrichment and on express contract for breach thereof may not coexist when both actions relate to the same subject matter"); *Estate of Popov,* 2003-Ohio-4556, ¶ 26 ("a claim pursuant to quasi-contract is incompatible with claims pursuant to an express contract, and the existence of an express contract between the parties bars recovery under the doctrine of unjust enrichment").

{¶ 11} Therefore, we cannot conclude that the trial court erred.  Accordingly, appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

{¶ 12} In its second assignment of error, appellant contends that the trial court erred in relying upon lay-witness opinion testimony as to the benefit conferred under the theory of unjust enrichment.  In essence, appellant argues that the trial court mistakenly relied on the lay-opinion testimony of Wanda and Jeremy as to the value of the benefit conferred to them, if any, as a result of the work done by appellant, specifically claiming that such opinion testimony was beyond the personal knowledge of those witnesses.  Appellant also argues that the trial court disregarded the testimony it offered regarding the value of the services provided.

{¶ 13} The trial court stated as follows with regard to whether appellee was liable to appellant under a theory of unjust enrichment:

> The Court finds under the facts of the present case that unjust enrichment does not apply.  The Court finds that the evidence does not support a finding that the Plaintiff has, at its expense, conferred a benefit upon the Defendants for which the Plaintiff may expect to be compensated.  Defendant Wanda [and] her daughter indicated in their testimony, that the Plaintiff's activities conferred no benefit upon the Defendants.  *Furthermore, the evidence does not support a finding that the value of the Defendant's real property was increased by the work performed on such real property by the Plaintiff,* or that any work performed by the Plaintiff facilitated the Defendant's use of the their [sic] real property.

(Emphasis added).

In light of the above, it appears that the trial court did rely on lay-witness testimony as to the benefit conferred by allowing the property owners to testify regarding the value of their property before and after the work was performed.

{¶ 14} We initially note that property owners may provide lay-opinion testimony as to the value of their property. As noted by the Sixth District Court of Appeals in *Lamberjack v. Gyde* (Nov. 19, 1993), Ottawa App. No. 92-OT-034, 1993 WL 476313:

> Evid.R. 602 requires that a witness have personal knowledge of the matter to which he is testifying. First hand knowledge is that which has been acquired through one or more of the five senses. Staff Note, Ohio Rev.Code Ann. Evid.R. 602 (Page 1991); Weissenberger [Ohio's Evidence (1991)], 135, Ch. 602. Further, a lay witness may give testimony in the form of opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or a fact in issue. Evid.R. 701.

Further, in *Abram v. Avon Lake*, 180 Ohio App.3d 145, 2008-Ohio-6871, 904 N.E.2d 612, citing *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 347, 513 N.E.2d 737, a case involving an action brought by residential landowners against the city related to special assessments, it was recognized that under Ohio law, "landowners are competent to testify about the value of their own land." The *Abram* court further noted, again relying on *Padgett*, that "[a]s landowners are competent to testify regarding the value of their own land, it is up to the fact finder to determine the weight of the testimony." Id. at ¶ 21.

{¶ 15} Thus, while the trial court did not err in relying on the lay-opinion testimony of the Galloways as to their property value, to the extent that the trial court used appreciation or diminution in value as the test to determine the "benefit conferred" for purposes of quantum meruit and/or unjust enrichment, the trial court did, in fact, err. For example, in *Girard v. Leatherworks Partnership*, Trumbull App. No. 2004-T-0010, 2005-Ohio-4779 at ¶ 41-42, the court held, "The reasonable value of the benefit conferred is the monetary amount expended for the services provided and materials used. * * * Clearly, the enhanced market value of the property is the improper valuation to apply in the case at bar." (Citations omitted.) However, we also note, "While in an appropriate case the amounts billed may be some evidence of the value of the services, the amounts billed do not necessarily equate with the value of the benefit conferred." *Functional Dev. Inc. v. Heaton* (Nov. 29, 1990), Franklin App. No. 90AP-253, 1990 WL 189948.

{¶ 16} Nonetheless, for the following reasons, we find that the trial court's reliance on the change, or lack thereof, in appellees' property value is harmless error. As set forth above, the trial court found that there was no express or implied contract, either written or oral, between the parties. Specifically, the trial court found that "the terms of the alleged contract, as asserted by Mr. Hix in his trial testimony, are insufficiently definite to create a binding, enforceable contract." In reaching this decision, the trial court noted that the alleged contract did not specify

the exact work to be done, when the work would begin, the pace of the progress of the work, when the work would be completed, or the specific part of the Galloway property that was to be involved. The court further noted that the alleged terms of the contract appear to greatly favor appellant. In reviewing the record, we find multiple explanations, by Hix himself, that indicate that the work he planned to do on the Galloway property was for his own benefit.

{¶ 17} For instance, Hix testified as follows at different points during the trial:

A.      * * * We had discussed this for several years prior to explaining what I wanted to do and how I wanted to do it. Gonna do a little of this, do a little of that. Especially, fix the water problem, get rid of some mosquitoes, clean the property up, raise my trailer up out of a flood plain.

* * *

A.      * * * This was not gonna cost her any money. I was gonna do this at my expense for the use of it, until such a time that either I moved, sold or no longer required or fell over dead.

* * *

A.      Well if you want the exact terminology, the exact terminology is that I wish to repair, level and take care of certain pieces of property on my side. With hers being adjoined, hers has to be done, as well.

* * *

A.      What my understanding of the agreement was, I had (inaudible) plans to do pretty much whatever I wanted to.

* * *

A.      The negotiate  * * * The truth of matter is I got flooded, and I
went up there and I said, Wanda, I'd like to fix that.

{¶ 18} In light of the above testimony, it appears to this court that appellant's actions in seeking to fill in a pond and raise the level of the Galloway property were for its own benefit.  The work done by appellant far exceeded merely filling in a small pond, and that work was done for the benefit of appellant, not appellees. Consequently, the evidence reflects that the benefit conferred as a result of appellant's work was to appellant.  Although appellees may have benefitted indirectly as a result of the work, the purpose in raising and leveling the Galloway property was primarily for the benefit of appellant.

{¶ 19} In *Mitchell v. Thompson*, Gallia App. No. 06CA8, 2007-Ohio-5362, when faced with a claim for unjust enrichment involving voluntary improvement to property, the trial court reasoned, "If you volunteer to do something without some kind of an agreement as to who's going to do what and who's going to pay what then essentially what you've done being a volunteer is that you have made a gift of that."  On appeal, this court acknowledged the reasoning of the trial court, noting the court's determination that the appellant "gratuitously" improved the land.

{¶ 20} Much as we did in *Mitchell*, we conclude that the work performed by appellant on the Galloway property was gratuitous, and while it may have resulted in some benefit to appellees, the work primarily benefitted appellant.  As explained

by Hix, he wanted to raise his property out of the flood plain. To do so, he had to also raise appellees' property. After six years of mentioning this to Wanda, she finally consented to having her pond filled and nothing more. That work, as well as any work performed that exceeded that, was gratuitous and for the benefit of appellant, and appellant is not entitled to compensation. Thus, we believe that the trial court reached the correct result, albeit for a reason different from ours. Accordingly, appellant's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

{¶ 21} In its third assignment of error, appellant contends that the trial court erred in finding that there was no clear, unambiguous promise upon which appellant could have reasonably relied in support of a promissory-estoppel claim. In support of its contention, appellant argues that the trial court disregarded Wanda's admission that she "allowed" appellant to fill in a hole on her property. In the case sub judice, the trial court found that there was no contract between the parties, either written or oral. The court further denied appellant's claims based on the doctrine of promissory estoppel, finding that there was no clear, unambiguous promise.

{¶ 22} Promissory estoppel is a quasicontractual or equitable doctrine. See *Worthington v. Speedway SuperAmerica, L.L.C.*, Scioto App. No. 04CA2938,

2004-Ohio-5077. The elements of promissory estoppel are described as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *McCroskey v. State* (1983), 8 Ohio St.3d 29, 30, 456 N.E.2d 1204, citing Restatement of the Law 2d, Contracts (1973), Section 90. In order to prevail on a claim of promissory estoppel, appellant must show a clear and unambiguous promise and reliance by the party to whom the promise is made. The reliance must be reasonable and foreseeable, and the party relying on the promise must have been injured by the reliance. See *Doe v. Adkins* (1996), 110 Ohio App.3d 427, 437, 674 N.E.2d 731, citing *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284, 619 N.E.2d 1035.

{¶ 23} A promise is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Stull v. Combustion Engineering, Inc.* (1991), 72 Ohio App.3d 553, 557, 595 N.E.2d 504, citing Restatement of the Law 2d, Contracts (1981) 8, Section 2(1). Furthermore, the party who asserts the promissory-estoppel claim bears the burden of proving by clear and convincing evidence all the elements of the claim. *In re Estate of Popov*, 2003-Ohio-4556, at ¶ 30. Whether appellee made "a clear and unambiguous promise" is a question of

fact. See, e.g., *McCroskey*, 8 Ohio St.3d 29; see also *Miller v. Lindsay-Green, Inc.*, Franklin App. No. 04AP-848, 2005-Ohio-6366.

{¶ 24} Based on our review of the evidence, we conclude that appellant failed to meet his initial burden of demonstrating that appellees had made a clear and unambiguous promise to appellant that they would either allow appellant use of the improved property for parking or pay it for the work. Even though the trial court noted in its decision that Wanda "allowed" appellant to fill in a pond, there is a difference between simply allowing the work to be done for another's benefit (to alleviate flooding on adjacent property) and enlisting or hiring someone to do the work. In fact, all the evidence establishes that appellees never made any promise to appellant regarding payment for the work, and there certainly was no clear agreement as to what work would be done, to what extent, and where.

{¶ 25} Furthermore, after two years of working, appellant had still not completed the job of simply filling in the pond and instead had focused most of its efforts on raising and leveling the property immediately adjacent to its own garage and Hix's trailer. Because appellant failed to meet its initial burden on the threshold element of a promise, we need not consider the additional elements needed for promissory estoppel.

{¶ 26} Additionally, we note the trial court's finding that the alleged agreement failed as an oral contract in that it was barred by the statute of frauds.

Appellant does not challenge that determination on appeal. As explained in *Spectrum v. Med. Mut. of Ohio*, 174 Ohio App.3d 29, 2007-Ohio-5562, 880 N.E.2d 926, at ¶ 40, citing *Beaverpark Assoc. v. Larry Stein Realty Co.* (Aug. 30, 1995), Montgomery App. No. 14950, 1995 WL 516469, "Courts generally apply the promissory-estoppel exception to the statute of frauds defense 'only in narrow circumstances.' " In addition to asserting the claim as a separate cause of action, in order for promissory estoppel to apply, "there must be 'either a misrepresentation that the statute of fraud's requirements have been complied with or a promise to make a memorandum of the agreement.' " Id., quoting *Beaverpark* at * 5.

{¶ 27} Here, appellant has not pointed to any evidence to show that appellees misrepresented that the statute of frauds had been complied with or that appellee promised to make a memorandum of the parties' alleged agreement. Thus, appellant has not shown that the application of the promissory-estoppel doctrine as an exception to the statute of frauds is warranted. Accordingly, appellant's third assignment of error is overruled.

{¶ 28} Because appellant's fourth and fifth assignments of error are grounded in the doctrine of promissory estoppel, and in light of our finding that the first element in establishing promissory estoppel is lacking, we need not address the remaining assignments of error.

Judgment affirmed.

HARSHA and KLINE, JJ., concur in judgment only.