[Cite as *Parks v. Parks*, 2013-Ohio-3595.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

TROY PARKS, ET AL.,                               :

    Plaintiffs-Appellants,                     :
                                                                  Case No. 12CA37
    vs.                                                   :

                                                                  <u>DECISION AND</u>
DALE L. PARKS, ET AL.,                          :        <u>JUDGMENT ENTRY</u>

    Defendants-Appellees.                    :        RELEASED 08/14/2013

_____

<u>APPEARANCES:</u>

William L. Burton, Marietta, Ohio, for Plaintiffs-Appellants.

John M. Halliday, Marietta, Ohio, and Jared T. Erb, Columbus, Ohio, for Defendants-Appellees.

_____

Hoover, J.

{¶ 1}  The plaintiffs-appellants, Troy Parks, Concetta Parks, Douglas Parks, Mary Ann Parks, Dana Parks, Mary Kay Parks, Rebecca Hilverding, and Matthew Hilverding, filed this case alleging breach of contract, breach of fiduciary duty, unjust enrichment, and fraud against the defendants-appellees, Dale Parks and Gale Parks.  The claims arose from the transfer, by general warranty deed, of the parties' family farm from the appellants and appellees as joint owners, to appellees as sole owners.  On appeal, appellants contest the decision of the Washington County Common Pleas Court, which directed a verdict in favor of appellees on appellants' claims of fraud and unjust enrichment.[1]  As to their unjust enrichment claim, appellants assert that they never received a full copy of the deed; that they signed blank signature

_____

[1] The trial court also directed verdict in favor of appellees on appellants' claims for breach of contract and breach of fiduciary duty.  Appellants, however, have not assigned error as to the trial court's directed verdict of these claims.

pages with the belief that they were granting the appellees the right to live on the farm (not with the intent to transfer their interest in the farm); and that they were never paid for their interest in the property. For their fraud claim, appellants argue that the appellees retained the deed and only distributed the signature pages among the family members for execution and notarization. Because we conclude that insufficient evidence was adduced for the jury to consider appellants' claims of fraud and unjust enrichment, we affirm the directed verdict of the trial court.

{¶ 2} Appellants also contend on appeal that the trial court "abused its discretion in that the manifest weight of the evidence was in favor of the plaintiffs." However, the determination of whether or not to grant a motion for directed verdict is a question of law and does not permit courts to weigh the evidence or make factual determinations. *See Parrish v. Jones*, 4th Dist. No. 11CA3238, 2012-Ohio-1145, ¶ 11 ("A motion for directed verdict presents a question of law, rather than factual issues."). Accordingly, appellants' argument that the manifest weight of the evidence was in their favor is without merit.

{¶ 3} The record reveals the following facts and procedural history. Ralph Parks (deceased), has six children: (1) Troy Parks, (2) Douglas Parks, (3) Dana Parks, (4) Rebecca Hilverding, (5) Dale Parks, and (6) Gale Parks.[2] From approximately 1992 until 2007, all six children and Ralph Parks owned a 1/7th interest in the family farm, located at 36600 State Route 260, Graysville, Ohio 45734. While Troy, Douglas, Dana, and Rebecca no longer participated in

---

[2] The first four listed children and their spouses constitute the plaintiffs-appellants. Dale Parks and Gale Parks, both unmarried, are the defendants-appellees.

the farming business[3]; the appellees resided with their father at the farm and made their living farming the property.

{¶ 4} In 2006, Ralph Parks, who had been experiencing health problems, contacted his lawyer James Peters, of Woodsfield, Ohio. Ralph Parks requested that the farm be transferred to the appellees, as sole owners. Attorney Peters informed Ralph Parks, via letter, that in order to carry out his wishes the other Parks children and their spouses would have to sign a deed transferring the property to the appellees as sole owners. In 2007, a general warranty deed was prepared and signed by Ralph Parks and the appellees. Attorney Peters then mailed the deed to Troy and Concetta Parks (husband and wife) with instructions to sign the deed. Troy and Concetta Parks signed the deed and had their signatures notarized, but instead of returning the deed to Attorney Peters as instructed, the deed was mailed to Ralph Parks, at the farm.

{¶ 5} Thereafter, all the remaining appellants voluntarily signed the deed and each signature was attested before a notary. However, the appellants, with the exception of Troy and Concetta Parks, now assert that they only received the signature pages.[4] They further contend that they signed the signature pages without reading the entire deed because they believed, based upon conversations with Ralph Parks, that they were merely granting appellees the right to live on the farm for the remainder of the appellees' lives. Appellees, on the other hand, contend that the deed was returned via mail to the farm by Troy and Concetta Parks in a manila envelope. Appellees further contend that they did not open the envelope to view its contents prior to distributing the envelope to the remaining appellants for signature; and thus, they do not know

---

[3] On occasion Troy, Douglas, Dana, Rebecca, and their respective spouses would help with the farming duties; however, farming was not the primary vocation of any of the appellants.
[4] Mary Kay Parks did not testify at trial, but her husband testified that she may have received the entire deed.

whether the appellants received the full deed or just the signature pages. In any event, the deed was eventually signed by all the parties including Ralph Parks. The deed was properly notarized and was returned to Attorney Peters' office. The deed was recorded in the office of the Monroe County Recorder on October 17, 2007. After Ralph Parks died in 2008, a dispute over the ownership of the farm developed among the parties.

{¶ 6} The appellants brought suit against appellees to recover their ownership interest in the property alleging fraud, breach of contract, breach of fiduciary duty, and unjust enrichment. A jury trial was held in the Washington County Common Pleas Court. After the appellants closed their case, appellees moved for a directed verdict. The trial court granted the appellees' motion for a directed verdict as to all counts of the complaint.

{¶ 7} Appellants filed a timely appeal raising three assignments of error for review.

First Assignment of Error:

> THE TRIAL COURT ERRED IN GRANTING DEFENDANTS A DIRECTED VERDICT ON PLAINTIFFS' UNJUST ENRICHMENT CLAIM.

Second Assignment of Error:

> THE TRIAL COURT ERRED IN GRANTING DEFENDANTS A DIRECTED VERDICT ON PLAINTIFFS' FRAUD CLAIM.

Third Assignment of Error:

> THE TRIAL COURT ABUSED ITS DISCRETION IN THAT THE MANIFEST WEIGHT OF THE EVIDENCE WAS IN FAVOR OF THE PLAINTIFFS.

{¶ 8} Upon a motion for a directed verdict, the trial court is required to construe the evidence most strongly in favor of the nonmoving party and to determine whether "upon any determinative issue [that] reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). The trial court must

give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. *Keeton v. Telemedia Co. of Southern Ohio*, 98 Ohio App.3d 405, 408, 648 N.E.2d 856 (4th Dist.1994), citing *Broz v. Winland*, 68 Ohio St.3d 521, 526, 629 N.E.2d 395 (1994). When determining whether to grant a motion for directed verdict, the trial court must submit an essential issue to the jury if there exists sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. *O'Day v. Webb*, 29 Ohio St.2d 215, 280 N.E.2d 896 (1972), paragraph four of the syllabus. *See also Strother v. Hutchinson*, 67 Ohio St.2d 282, 284-285, 423 N.E.2d 467 (1981), quoting *Hawkins v. Ivy*, 50 Ohio St.2d 114, 115, 363 N.E.2d 367 (1977).

{¶ 9} A motion for directed verdict does not present a question of fact or raise factual issues, although the trial court is required to review and consider the evidence. *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 430 N.E.2d 935 (1982), paragraph one of the syllabus. Instead, a motion for directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. *Id*. at 68-69. A motion for directed verdict therefore presents a question of law; and we conduct a de novo review of the trial court's judgment. *Howell v. Dayton Power & Light Co.*, 102 Ohio App.3d 6, 13, 656 N.E.2d 957 (4th Dist.1995); *Keeton* at 409.

{¶ 10} For ease of analysis, we will first address appellants' second assignment of error. In their second assignment of error, the appellants contend that the trial court erred when it directed a verdict in favor of appellees on the fraud claim.

{¶ 11} In order to prevail on a claim of fraud, a claimant is required to prove the following elements:

(a) a representation, or where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Swanson v. Boy Scouts of Am.*, 4th Dist. No. 07CA663, 2008-Ohio-1692, ¶ 17, fn. 2, quoting *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55, 514 N.E.2d 709 (1987).

"A deed will not be set aside on the basis of fraudulent misrepresentation unless the plaintiff proves such conduct by clear and convincing evidence." *Village of Seaman v. Altus Metals, Inc.*, 4th Dist. No. 99CA683, 2000 WL 331596, *4 (Mar. 24, 2000).

{¶ 12} In the case sub judice, it is undisputed that the appellees made no false representations to the appellants. Rather, appellants' belief that they were merely granting the appellees a right to live on the farm for the remainder of their lives was based on their conversations with Ralph Parks; not on conversations with the appellees. Consequently, there is no evidence that the appellants relied upon any statements made by the appellees.

{¶ 13} For instance, Dana Parks testified that after signing the instrument, he had a conversation with Ralph Parks in which he left believing that he still owned his interest in the property. Matthew Hilverding testified that he did not discuss what he was signing with either Gale Parks or Dale Parks. Matthew Hilverding believed, based upon his conversations with Ralph Parks, that he was signing an instrument that would transfer the property from Ralph Parks

and the six children, to just the six children. Similarly, Douglas Parks testified that the family agreed to deed the property from Ralph Parks and the six children, to just the six children with the understanding that the appellees would have the right to live in the farmhouse. He further testified that he had no discussions with the appellees regarding the future of the farm; that his only discussions were with Ralph Parks. Mary Ann Parks testified that her understanding of what was to happen with the farm were based on conversations between her husband and Ralph Parks. Mary Ann Parks further testified that she had no contact with either Dale Parks or Gale Parks regarding the ownership of the property. Rebecca Hilverding testified that prior to signing the instrument, she had no discussions with the appellees. Rather, she believed that the papers were intended to grant the appellees the right to live in the farmhouse, and that such belief was based upon group conversations with the family. Troy Parks testified that he had discussions with Ralph Parks, in which Ralph Parks expressed an interest in transferring the property from all six children to just Troy Parks solely. However, because Troy Parks opposed the idea of owning the property outright, he was the one that first suggested to Ralph Parks that the farm be placed solely in the appellees' names.

{¶ 14} Appellants' fraud claim also relies upon the theory that the appellees withheld from them the entire deed, and only distributed to them the signature pages. First, it is undisputed that Troy and Concetta Parks received the entire deed directly from Attorney Peters. Dana Parks also testified that his wife, Mary Kay Parks, was presented the entire deed. Even if it is true that the remainder of the appellants only received the signature pages, such fact does not support the appellants' fraud claim. As previously discussed, no evidence was presented suggesting that the appellees misrepresented the legal effect of the document, or that the

appellees purposefully withheld the contents of the deed.[5]  Moreover, if appellants had questions of what they were signing they could have refused to sign it; or alternatively, they could have asked to see the entire document before they signed it.  "Ordinarily, persons of full age in possession of their faculties who sign an instrument and remain acquiescent to its operative facts for sometime cannot escape its consequences by alleging that they did not read it or that they relied upon the representations of another as to its contents or significance."  (Quotations omitted.)  *Henkle v. Henkle*, 75 Ohio App.3d 732, 737, 600 N.E.2d 791 (12th Dist.1991).

{¶ 15}  Upon independent review, we find that the trial court did not err in granting a directed verdict in appellees' favor on appellants' fraud claim.  Even construing the evidence most strongly in favor of the appellants, insufficient evidence exists to permit reasonable minds to reach different conclusions on the claim of fraud.  Accordingly, appellants' second assignment of error is overruled.

{¶ 16}  For their first assignment of error, the appellants allege that the trial court erred in directing a verdict in favor of appellees on the appellants' claim of unjust enrichment.

{¶ 17}  As an initial matter, appellees' contend that the appellants failed to object to the trial court's directed verdict on the unjust enrichment claim, and thus failed to preserve the issue for appeal.  Following the appellees' argument in support of their motion for directed verdict on the unjust enrichment claim, the trial court offered the appellants an opportunity to respond.  At that time, the appellants responded simply: "No response, Your Honor."  The trial court then directed verdict in favor of the appellees on appellants' claim of unjust enrichment.

---

[5] The testimony adduced at trial was that the appellees simply forwarded the manila envelope received from Troy and Concetta Parks, and that they were completely unaware of the contents of the envelope.

{¶ 18}  A failure to object to the imposition of a directed verdict results in forfeiture of all but plain error review.  *Mynes v. Brooks*, 4th Dist. No. 08CA3211, 2009-Ohio-5017, ¶ 52. Nonetheless, for the purposes of this opinion, we will assume, without deciding, that the appellants properly preserved the issue for appeal because we find no error, let alone plain error, in the trial court's directed verdict on the unjust enrichment claim.

{¶ 19}  Unjust enrichment occurs " 'when a party retains money or benefits which in justice and equity belong to another.' "  *HAD Ents. v. Galloway*, 192 Ohio App.3d 133, 2011-Ohio-57, 948 N.E.2d 473, ¶ 8 (4th Dist.), quoting *Cooper v. Smith*, 155 Ohio App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, ¶ 30 (4th Dist.), in turn citing *Liberty Mut. Ins. Co. v. Indus. Comm.*, 40 Ohio St.3d 109, 111, 532 N.E.2d 124 (1988).  In order to prevail on an unjust enrichment theory, the plaintiff must establish three elements: " '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.' "  *Galloway* at ¶ 8, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

{¶ 20}  Appellants argue that they are entitled to an order of recession of the deed, an order imposing a constructive trust over the farm, or an order of damages sufficient to compensate them for the fair market value of the property, because they allege the appellees gained their interests in the property through fraud and wrongdoing.  First, we note that the appellees did not commit any actionable fraud against the appellants; and thus appellants cannot use the alleged fraud as the basis for its unjust enrichment claim.  Further, we conclude that the appellees have not unjustly retained the appellants' interests in the farm.  Each appellant signed the deed transferring his or her interest in the property voluntarily, and with no expectation of

payment. "The issue of unjust enrichment does not arise with absolute gifts because

'[e]nrichment of the donee is the intended purpose of a gift.' " *Cooper v. Smith*, 155 Ohio

App.3d 218, 2003-Ohio-6083, 800 N.E.2d 372, ¶ 28 (4th Dist.), quoting *Lane v. Saunders*, 4th

Dist. No. 85CA5, 1985 WL 17472, *2 (Dec. 13, 1985).

{¶ 21} Accordingly, the trial court did not err in granting a direct verdict in favor of the

appellees on the appellants' claim of unjust enrichment. The appellants' first assignment of error

is overruled.

{¶ 22} For their third and final assignment of error, appellants contend that the manifest

weight of the evidence was in their favor; and therefore, a directed verdict was inappropriate.

Because determination of a motion for directed verdict is a question of law, in which courts are

not permitted to weigh the evidence or make factual determinations, appellants' third assignment

of error lacks merit.

{¶ 23} " 'A motion for a directed verdict * * * does not present factual issues, but a

question of law, even though in deciding such a motion, it is necessary to review and consider

the evidence.' " *Ohio Power Co. v. Ogle*, 4th Dist. Nos. 09CA1 & 09AP1, 2009-Ohio-5953, ¶

18, quoting *Wright v. Suzuki Motor Corp.*, 4th Dist. Nos. 03CA2, 03CA3, 03CA4, 2005-Ohio-

3494, ¶ 96, in turn quoting *O'Day*, 29 Ohio St.2d at paragraph three of the syllabus, 280 N.E.2d

896. Put another way, a motion for directed verdict tests the *legal sufficiency of the evidence*

rather than its weight or the credibility of the witnesses. *Ruta*, 69 Ohio St.2d at 68-69, 430

N.E.2d 935. It follows, that "when a trial court rules on a motion for a directed verdict, it must

consider neither the weight of the evidence nor witness credibility." *Ogle* at ¶ 19. Similarly,

"[i]n an appeal based upon a motion for a directed verdict, we consider neither the weight of the evidence nor witness credibility." *Id*. at ¶ 27.

{¶ 24} Here, the trial court determined that the appellants failed to provide sufficient evidence in support of their claims. The trial court's decision was not based on the weight of the evidence, but rather whether there existed legally sufficient evidence to permit reasonable minds to reach different conclusions on appellants' claims. Appellants simply miscomprehend the duty of a court when confronted with a motion for a directed verdict. "Weighing evidence connotes finding facts from the evidence submitted; no such role is undertaken by the court in considering a motion for directed verdict." *Ruta* at 69. Moreover, just because "resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised." *Id*. at 68. Accordingly, appellants' argument that "the manifest weight of the evidence was in favor of the plaintiffs," is wholly without merit and is irrelevant to the determination of a motion for directed verdict. Appellants' third assignment of error is overruled.

{¶ 25} Having rejected all of appellants' arguments, we find that the trial court did not err in granting appellees a directed verdict on appellants' claims of fraud and unjust enrichment. We affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED.  Appellants shall pay the costs herein taxed.  The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. and Harsha, J.:  Concur in Judgment and Opinion.

For the Court

By:
        Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.