[Cite as *Med Express v. Univ. of Colorado Denver*, 2015-Ohio-144.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| MED EXPRESS | C.A. No.    14CA0024-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT<br>ENTERED IN THE |
| UNIVERSITY OF COLORADO DENVER | MEDINA MUNICIPAL COURT<br>COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    13 CVI 00899 |

DECISION AND JOURNAL ENTRY

Dated: January 20, 2015

MOORE, Judge.

{¶1}   Defendant, University of Colorado Denver ("the University") appeals from the judgment of the Medina Municipal Court. This Court vacates the decision of the trial court for lack of personal jurisdiction over the University.

I.

{¶2}   In 2013, Med Express, located in Valley City, Ohio, filed a small claims complaint in the Medina Municipal Court against the University, located in Denver, Colorado. In its complaint, Med Express alleged that it had sent, through insured delivery, a diagnostic unit to the University. The unit arrived at the University in a damaged state. Med Express further maintained that the University failed to fully notify Med Express about the extent of the damages, and returned the unit to Med Express uninsured, making it impossible for Med Express to make a claim for damages through the delivery company.

{¶3} The University, through its attorney, David P. Temple, filed a motion to dismiss for lack of personal jurisdiction. Included with the motion was an affidavit of the University's faculty member Michelle Kerklo. Because Mr. Temple was not admitted to practice law in the State of Ohio, the magistrate issued an order striking the motion to dismiss. However, in the order striking the motion to dismiss, the magistrate stated that the court would consider Ms. Kerklo's affidavit prior to issuing a decision.

{¶4} A trial to the magistrate was later held, at which the University did not appear. The president of Med Express, Richard Radley, appeared at the trial and testified. Mr. Radley maintained that the University had contacted him because it was interested in purchasing a diagnostic unit that Med Express had listed on an internet website. The University inquired as to condition of the unit, which Mr. Radley maintained was in good condition. The parties then engaged in negotiations over the telephone and through email. The University agreed to purchase the unit for $3,000, and Med Express agreed to provide free shipping. The University agreed to charge one of its credit cards for the $3,000 purchase price. Med Express sent the unit to the University through an insured delivery service. However, after the University received the item, the University contacted Mr. Radley, and advised him that the unit had arrived with a broken mounting arm and was missing a component. As a result, the University wished to return the unit for a full refund. Mr. Radley responded that the University could contact the manufacturer for the missing component, and Med Express would cover the cost. Also, Mr. Radley advised the University that he had mounting arms in stock to replace the broken piece.

{¶5} Mr. Radley maintained that, thereafter, the University sent him an email advising him that it was unable to repair the unit, and wanted to return the unit for full credit as soon as possible. Mr. Radley, believing that the only damage to the unit was the missing component and

broken arm, advised the University that it could sent the unit back and Med Express would give it a full credit. The University returned the unit through uninsured delivery. When Med Express received the unit, it had extensive damage and was completely unusable. Mr. Radley then contacted the University and said that he was not made aware of the extent of the damage, and offered to refund the University $2,000 and to provide it a $1,500 store credit. The University declined and then disputed the charge with its credit card company. The University won the dispute, and the purchase price was refunded to the University's account. Because Med Express could not establish when the damage occurred, and because the University had returned the item through uninsured delivery, Med Express could not successfully make a claim through delivery insurance for the damages to the unit.

{¶6} Following the small claims hearing, the magistrate issued a decision dismissing Med Express' complaint due to lack of personal jurisdiction over the University. In its decision, the magistrate pointed to Ms. Kerklo's affidavit, wherein she stated that the University's only dealings with Med Express pertained to the purchase of the unit. Med Express filed objections to the magistrate's decision. Mr. Temple then filed a motion to appear pro hac vice, and filed a response to Med Express' objections on behalf of the University, contending that the magistrate had correctly determined that the court lacked personal jurisdiction over the University. The trial court granted Mr. Temple's motion to appear pro hac vice.

{¶7} Thereafter, the trial court sustained Med Express' objections, and entered judgment in favor of Med Express, concluding that the court could not consider the affidavit of Ms. Kerklo because it was included with the stricken motion, and it could not sua sponte review personal jurisdiction. Alternatively, the trial court concluded that Ms. Kerklo's affidavit constituted a waiver of personal jurisdiction. In addition, the trial court determined that Med

Express had successfully proven its claim and awarded it damages in the amount of $3,000. The University timely appealed from the trial court's judgment, and it now raises three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE JUDGE'S DETERMINATION THAT THE MAGISTRATE WAS NOT PERMITTED TO CONSIDER THE COURT'S PERSONAL JURISDICTION OVER THE UNIVERSITY SUA SPONTE WAS ERROR.

**{¶8}** In its first assignment of error, the University argues that the trial court erred in concluding that the magistrate could not sua sponte raise the issue of personal jurisdiction. We agree.

**{¶9}** "[I]n order to render a valid personal judgment, a court must have personal jurisdiction over the defendant." *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984). "An objection to the lack of jurisdiction over a person generally must be raised either in the defendant's answer or in a motion filed prior to the filing of an answer." *State ex rel. DeWine v. 9150 Group, L.P.,* 9th Dist. Summit No. 25939, 2012-Ohio-3339, ¶ 6, citing *Franklin v. Franklin*, 5 Ohio App.3d 74, 75-76 (7th Dist.1981). "A defense of lack of jurisdiction over the person * * * is waived * * * if it is neither made by motion under [Civ.R. 12] nor included in a responsive pleading or an amendment thereof permitted by Rule 15(A) to be made as a matter of course." Civ.R. 12(H)(1). "However, if the defendant does not appear in the action, the defense is not waived for failing to object." *DeWine* at ¶ 6, citing *Maryhew* at 156-159 (defendant had not submitted to the court's jurisdiction, where submission to jurisdiction would have waived the issue of lack of personal jurisdiction), and *Mortgage Lenders Network USA, Inc. v. Riggins*, 9th

Dist. Summit No. 22901, 2006-Ohio-3292 (trial court acquired personal jurisdiction over appellant when she made a voluntary appearance in the matter).

{¶10} The trial court here concluded that, because the magistrate struck the motion to dismiss, there was no assertion of lack of personal jurisdiction made on the part of the defendant prior to the magistrate's decision. Further, the trial court determined that the magistrate could not consider Ms. Kerklo's affidavit, holding that "when a pleading is stricken from a case, the [c]ourt may not consider attachments to the pleading as if they had been filed separately[.]" The court, relying on *D'Amore v. Mathews*, 193 Ohio App.3d 575, 2011-Ohio-2853 (12th Dist.), then determined, "Generally, because a lack of personal jurisdiction was not raised and is therefore considered to be waived, the magistrate/trial court cannot sua sponte address the issue of personal jurisdiction in its decision."

{¶11} However, we conclude that *D'Amore* is distinguishable from this case on its facts. In *D'Amore*, the defendant personally appeared in the action and failed to raise lack of personal jurisdiction as a defense. *Id.* at ¶ 32-33. Therefore, the defendant waived the defense of lack of personal jurisdiction. *Id.* at ¶ 33. The Twelfth District held, "*once the lack of personal jurisdiction was waived*, the trial court could not sua sponte address the issue of personal jurisdiction in its judgment entry." (Emphasis added.) *Id.* at ¶ 34; *see also Brislin v. Albert*, 9th Dist. Summit No. 27052, 2014-Ohio-3406, ¶ 9. Here, because the trial court struck the motion to dismiss, there was no appearance by the University prior to the magistrate's decision. Thus, the University did not waive the defense of lack of personal jurisdiction because it did not appear voluntarily in the action without raising the issue of personal jurisdiction. *See Maryhew* at 156-159. Therefore, the trial court erred in determining that the University's failure to appear

constituted a waiver, i.e. a voluntary relinquishment of a known right, of the defense of personal jurisdiction.

{¶12} Because the University did not appear, and did not raise the issue of personal jurisdiction prior to trial, we next must address whether the trial court was permitted to sua sponte review the issue of personal jurisdiction. The University argues that the trial court was permitted to sua sponte address personal jurisdiction in this case, and cites *Bradley Shoptaw v. I & A Auto Sales, Inc.*, 10th Dist. Franklin No. 12AP-453, 2012-Ohio-6259 in support. In *Shoptaw*, certain defendants had not appeared in the action, and the trial court sua sponte determined that it lacked jurisdiction over non-appearing defendants. *Id.* at ¶ 17-18. The plaintiff appealed, arguing in part that the trial court could not sua sponte raise the issue of personal jurisdiction. *Id.* at ¶ 13. On appeal, the Tenth District affirmed, distinguishing *D'Amore* because there the defendant had appeared but waived jurisdiction by failing to properly raise the issue. *Shoptaw* at ¶ 19, citing *D'Amore* at ¶ 34. The Tenth District noted a dearth of case law on the issue of whether the trial court could sua sponte address personal jurisdiction where the defendant had not waived the issue. It could not locate any authority prohibiting the trial court from doing so under the circumstances present in that case. *Id.* at ¶ 20.

{¶13} Here, because the trial court struck the motion to dismiss, there was no appearance by the University prior to the magistrate's decision. We agree with the trial court that it could not consider the affidavit filed as an attachment to the stricken motion independently from the motion. Therefore, the University neither effectively challenged nor waived personal jurisdiction prior to trial. Further, the first properly filed document on behalf of the University was a response to Med Express' objections to the magistrate's decision, wherein the University argued that the magistrate properly concluded that the court had no personal jurisdiction over the

University. Under these circumstances, we conclude that there was no waiver of personal jurisdiction, and the trial court erred in holding otherwise. Consequently, we conclude that the trial court further erred in its determination that the holding in *D'Amore* was applicable to this case.

{¶14} Accordingly, the University's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE JUDGE INCORRECTLY CONCLUDED THAT PERSONAL JURISDICTION OVER THE UNIVERSITY EXISTED.

{¶15} In its second assignment of error, the University argues that the trial court erred in alternatively concluding that it had personal jurisdiction over the University. We agree.

{¶16} The determination of personal jurisdiction is a question of law and is reviewed de novo. *Eisel v. Austin,* 9th Dist. Lorain No. 09CA009653, 2010-Ohio-816, ¶ 8. "In determining whether a state court has personal jurisdiction over a non-resident defendant, courts engage in a two-prong analysis." *Dewine*, 2012-Ohio-3339, at ¶ 9, citing *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 183 (1994). "As to the first prong, we must determine if Ohio's 'long-arm' statute and civil rules apply to confer personal jurisdiction." *DeWine* at ¶ 9, quoting *U.S. Sprint* at 184. "If so, we must determine if application of personal jurisdiction 'would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution.'" *DeWine* at ¶ 9, quoting *U.S. Sprint* at 184.

{¶17} Ohio's long-arm statute is set forth in R.C. 2307.382. The University does not contest that the long-arm statute and related civil rules apply. However, it argues that the exercise of jurisdiction over it does not comport with due process.

{¶18} In order to satisfy due process requirements, a defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). "This due process requirement may be satisfied where the forum state has either specific or general jurisdiction over a nonresident." *DeWine* at ¶ 18, citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984), fns. 8 and 9. Neither party argues that the trial court had general jurisdiction over the University. Therefore, we will limit our review to the issue of whether there was specific jurisdiction over the University so as to satisfy the due process prong of the personal jurisdiction inquiry.

{¶19} "Three requirements must be met to establish specific jurisdiction. 'First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'" *DeWine* at ¶ 19, quoting *Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). *See also In re Blue Flame Energy Corp.*, 171 Ohio App.3d 514, 2006-Ohio-6892, ¶ 18 (10th Dist.). "The first two of these requirements establishes a defendant's 'minimum contacts' with the forum." *DeWine* at ¶ 19, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

{¶20} As to the first requirement of "purposeful availment," the defendant's contacts with the forum state must "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." (Emphasis omitted.) *Kauffman Racing Equip.,*

*L.L.C. v. Roberts*, 126 Ohio St.3d 81, 88-89, 2010-Ohio-2551, ¶ 51, quoting *Burger King Corp.*, 471 U.S. at 475, quoting *McGee v. Internatl. Life Ins. Co.*, 355 U.S. 220, 223, (1957). "The defendant's conduct and connection with the forum must be such that he 'should reasonably anticipate being haled into court there.'" *Kauffman* at ¶ 51, quoting *Burger King* at 474, quoting *World-Wide Volkswagen,* 444 U.S. 286, 295 (1980). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts[.]" *Kauffman* at ¶ 51, quoting *Burger King* at 475, citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). Moreover, this requirement ensures that the defendant will not be subjected to another state's jurisdiction based on the "unilateral activity of another party or third person[.]" *Id.*, quoting *Helicopteros Nacionales*, 466 U.S. at 417.

**{¶21}** Here, as set forth in our discussion of the University's first assignment of error, the trial court erroneously determined that the University had waived the issue of personal jurisdiction and that the trial court could not sua sponte review personal jurisdiction in this case. However, in its decision, it went on to "specifically hold[] that the decision in *Malone v. Berry*, 174 Ohio App.3d 122[, 2007-Ohio-6501 (10th Dist.)], finding lack of personal jurisdiction where a purchase was made through an on-line auction [wa]s not determinative of the issues in this matter." This was because "[t]he purchase of the equipment in this matter was made through an advertising website maintained by the plaintiff for the purpose of selling its equipment and does not constitute the type of impersonal contact between a bidder and seller such as occurs in an on-line auction proceeding."

**{¶22}** Thus, it appears that the trial court alternatively held that personal jurisdiction was proper by finding the reasoning in *Malone* inapplicable to the present case. We agree that

*Malone* and similar cases pertaining to internet sales in the forum state are not particularly useful in our analysis here, but for a different reason: such cases typically pertain to whether listing the item for sale online establishes minimum contacts of the *seller* to the forum state. Here, we are concerned whether the trial court had personal jurisdiction over an out-of-state *buyer*.

{¶23} "Several federal courts have declined to find that a defendant's mere purchase of goods from another state creates minimum contacts with that state for purposes of personal jurisdiction and have distinguished situations where the nonresident defendant is a buyer, as opposed to a seller." *Austin Miller Am. Antiques, Inc. v. Cavallaro*, 10th Dist. Franklin No. 11AP-400, 2011-Ohio-6670, ¶ 16. "The mere existence of a contract between the defendant and a forum resident does not provide the requisite contacts and 'use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the "minimum contacts" required by due process.'" *Id.*, quoting *Scullin Steel Co. v. Natl. Ry. Utilization Corp.*, 676 F.2d 309, 313-14 (C.A.8, 1982).

{¶24} In *Cavallaro*, the Tenth District addressed whether Ohio had personal jurisdiction over the out-of-state buyer of an antique chandelier from an Ohio corporation. *Id.* at ¶ 2. The Tenth District determined that, "[n]either the mere existence of [the buyer's] contract with an Ohio corporation nor [the buyer's] making of payments to an Ohio corporation establish the requisite minimum contacts for the exercise of jurisdiction by the Ohio courts." *Id.* at ¶ 21. We conclude that the present case is similar to *Cavallaro*, in that, although the buyer contacted an Ohio entity, and negotiated and entered into an agreement for the purchase of a good, essentially both *Cavallaro* and the present case involved isolated product purchases.

{¶25} Based upon the record before us, we conclude that the University's contacts with Ohio in relation to the negotiation, purchase, and return of the diagnostic unit do not rise to the level of a "substantial connection" with Ohio to allow the University to "reasonably anticipate being haled into court [in Ohio.]" *Burger King*, 471 U.S. at 474-75. Accordingly, the trial court lacked personal jurisdiction over the University, and we need not conduct further analysis to determine whether asserting personal jurisdiction over the University would comport with "fair play and substantial justice." *See Joffe v. Cable Tech, Inc.*, 163 Ohio App.3d 479, 493, 2005-Ohio-4930, ¶ 35 (10th Dist.), quoting *Burger King* at 477.

{¶26} We conclude that the trial court lacked personal jurisdiction over the University. Therefore, we sustain the University's second assignment of error.

## ASSIGNMENT OF ERROR III

THE JUDGE'S CONCLUSION THAT MED EXPRESS HAD PROVEN ITS CONTRACT CLAIM IS ERROR.

{¶27} In its third assignment of error, the University argues that the trial court erred in finding in favor of Med Express on its claim. Having concluded that the trial court lacked jurisdiction over the University, the judgment in this matter must be vacated. Accordingly, the University's third assignment of error, which speaks to the merits of Med Express' claim, is rendered moot. *See* App.R. 12(A)(1)(c).

III.

{¶28} The University's first and second assignments of error are sustained. The University's third assignment of error is rendered moot. The judgment of trial court is vacated.

Judgment vacated.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

DAVID P. TEMPLE, Attorney at Law, for Appellant.

RICHARD MILLER, Attorney at Law, for Appellant.

JAMES A. AMODIO and DONALD LUKE ROSS, Attorneys at Law, for Appellee.